**CIRCUIT COURT OF FAIRFAX COUNTY**

Joseph W. Key

v.

Lewis Aquatech
Pool Supply, Inc.

March 14, 2002

Case No. (Law) 195377

BY JUDGE HENRY E. HUDSON

This case involves the construction of a swimming pool by the Defendant in the Plaintiff's backyard. The Plaintiff, Joseph W. Key, individually signed the contract for construction of the pool on October 23, 1999. The parties executed an addendum to that agreement on May 5, 2000. The Defendant initially completed construction of the pool in August of 2000; however, because of substandard soil preparation and faulty construction, cracks emerged in the concrete. Defendant eventually corrected those defects after Plaintiff engaged counsel and a soil expert. Notwithstanding Defendant's corrections to the faulty construction, Plaintiff filed a motion for judgment against Lewis Aquatech Pool Supply, alleging several counts, including breach of contract, breach of express warranty, violation of the Virginia Consumer Protection Act, and deceptive advertising.

After hearing four days of testimony, the Court dismissed Count V (Breach of Express Warranty) and awarded judgment for the Plaintiff in the amount of $800.00 on Count VII (Breach of Contract). The Court took Count I (Violation of the Virginia Consumer Protection Act) under advisement.[1]

---

[1] The Court earlier granted Defendant's Motion to Strike as to Count II (Deceptive Advertising). All other counts of the Motion for Judgment were eliminated by Demurrer, which the Court previously sustained.

Central to Plaintiff's argument on the Virginia Consumer Protection Act Count was the "sales pitch presentation" by Defendant's representative, Richard DeCelle. Mr. DeCelle met with the Plaintiff and his wife on several occasions. According to the testimony of DeCelle and the Plaintiff, DeCelle displayed several brochures to Plaintiff and his wife, including a Residential Pools Brochure (Plaintiff's Exhibit 1), a Lewis Aquatech Pools Brochure (Plaintiff's Exhibit 2), a brochure entitled "Demand the Finest Demand Aquatech" (Plaintiff's Exhibit 3), and a pictorial publication dubbed a "Pitch Book" (Plaintiff's Exhibit 5).

Plaintiff testified that he was certain that he reviewed Exhibits 1, 2, and 5 before signing the contract. He also testified that he viewed portions of Exhibit 3, but he was not certain if he reviewed that exhibit in its entirety. DeCelle testified that he may have shown Exhibit 3 to Plaintiff. Conversely, Joseph Gwizdz, Sr., owner of the Defendant construction company, testified that Plaintiff's Exhibit 2 was not published until March 2000 and was therefore not available for Plaintiff to review prior to signing the contract.

Although the materials displayed, as well as those allegedly displayed, to the Plaintiff varied in content, each contained numerous pictures of swimming pools, stonework, equipment, surrounding decks, and structures. Plaintiff's Exhibits 1 and 3 did not contain any specific reference to Lewis Aquatech Pools and merely refer to Aquatech Pools, a nationwide system of builders of which Lewis Aquatech is a part. Exhibits 2 and 5 mention Lewis Aquatech Pools prominently and include information about the Defendant company. With a few exceptions, builders affiliated with the Aquatech network, rather than Defendant Lewis Aquatech, constructed the pools depicted in the brochures.

DeCelle testified that, during his sales presentation, he failed to explain the distinction between Lewis Aquatech and Aquatech Pools to the Plaintiff. The Plaintiff testified that it was his impression that they were the same entity. DeCelle also testified that he failed to inform the Plaintiff that the pools depicted in the brochures were built by Aquatech affiliates, rather than by Defendant Lewis Aquatech. In fact, in response to the Plaintiff's questions concerning specific pools portrayed in the "Pitch Book" (Exhibit 5), DeCelle admitted that he told him that several pools were built by Lewis Aquatech. The Plaintiff also recalled DeCelle representing that certain pools in the "Pitch Book" were built by Lewis Aquatech. This information was incorrect.

DeCelle further informed the Plaintiff that the Defendant would complete construction of the pool within six to eight weeks. He also represented that Lewis Aquatech was the premier pool builder in the area and that there would be a regular project supervisor on site. Although Plaintiff's wife testified

unequivocally that she relied upon DeCelle's representations that the pools depicted in the "Pitch Book" were built by Lewis Aquatech, the Plaintiff himself never testified that DeCelle's misrepresentations influenced his decision to sign the contract.

Joseph Gwizdz, Sr., testified that he had assisted in the training of DeCelle and that he had never authorized or trained DeCelle to represent that the pools in the "Pitch Book" were built by Lewis Aquatech. Gwizdz described the "Pitch Book" as an "idea book" illustrating what was available in the industry. According to Gwizdz, the pools depicted in the brochures were designed and constructed by builders who were members of the Aquatech network. He further testified that Aquatech was capable of constructing the pools and related structures featured in the brochures. Gwizdz adamantly denied that the promotional materials were intended to deceive or defraud the Plaintiff or any other customer.

Plaintiff argues that the brochures and "Pitch Book," coupled with the representations of Defendant's salesman, Richard DeCelle, violated the Virginia Consumer Protection Act. Specifically, Plaintiff contends that DeCelle's misrepresentation that pools depicted in the promotional materials were actually built by Lewis Aquatech, rather than by other Aquatech affiliates, violates Virginia Code § 59.1-200(A)(2) (misrepresentation as to the source of goods); (A)(4) (misrepresentation as to geographic origin of goods and services); (A)(5) (misrepresentation of characteristics of goods); and (A)(14) (false promise, fraud, or misrepresentation in connection with a commercial transaction).

With respect to the allegation that Defendant misrepresented the source or origin of the pool or construction materials, the Court is of the opinion that the Virginia Code § 59.1-200(A)(2) is not applicable to the facts of this case. The Court finds that there were no misrepresentations as to the source or origin of the materials used to construct the pool. Furthermore, assuming that DeCelle represented that Defendant would employ their usual subcontractors, who were duly licensed and bonded, this would not constitute an actionable misrepresentation because it was not a statement of existing fact. Plaintiff failed to present evidence that DeCelle was aware of the identity of the actual subcontractors to be used for the construction of the pool, or the status of their license, at the time of his sales presentation.

The same analysis applies to DeCelle's alleged statement that a supervisor would be on site throughout the construction process. DeCelle's statements were no more than unfulfilled promises. Such statements do not violate the Virginia Consumer Protection Act, which requires that the misrepresentation be fraudulent. *See Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 111

(2001), and *Mortarino v. Consultant Eng'g Svs., Inc.*, 251 Va. 289, 293 (1996).

Similarly, DeCelle's description of Lewis Aquatech as the premier pool builder in the area was simply a statement of opinion that did not rise to the level of a fraudulent misrepresentation. *Tate v. Colony House Builders, Inc.*, 257 Va. 78, 84 (1999) (mere opinion statements do not constitute fraud). Moreover, no evidence was presented that Aquatech was not a premier pool builder in the area at the time Plaintiff signed the contract.

Turning next to DeCelle's erroneous identification of some of the pools depicted in the promotional material as ones constructed by the Defendant, the Court does not believe that this constitutes a fraudulent representation. DeCelle testified that he presented the "Pitch Book" for the purpose of giving customers design ideas. Moreover, Joseph Gwizdz, Sr., testified that the Defendant company could build all the pools and related structures illustrated in the promotional literature. Absent proof of a deliberate, and intentionally deceptive, concealment of the fact that Lewis Aquatech did not construct pools depicted in the literature, such nondisclosure does not violate the Virginia Consumer Protection Act. *See Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001) (holding that a violation of the Act founded upon a material omission must be deliberate).

The Court is also not convinced that Plaintiff has proven that DeCelle intended to defraud the Plaintiff when he erroneously identified some of the pools in the brochures as having been constructed by Defendant. In fact, Plaintiff failed to present any evidence that at the time of the sales presentation, DeCelle knew the identity of the company who actually built the pools displayed in the literature. The evidence falls short of demonstrating a conscious intent to deceive at the time the sales presentation was made to the Plaintiff. *See Patrick v. Summers*, 235 Va. 452, 455-56 (1988) (affirming that evidence of fraud must be clear and convincing).

In addition to Plaintiff's failure to establish that the alleged misrepresentations were fraudulent, Plaintiff failed to prove that he relied on DeCelle's comments in his decision to enter into the construction contract. Although Plaintiff's wife testified that she relied on DeCelle's statements, only Mr. Key signed the contract at issue in this case.

For the foregoing reasons, the Court finds for the Defendant on Count I of the Motion for Judgment.

348

*Order*

Pursuant to the Memorandum Opinion dated March 14, 2002, the Court finds that Defendant Lewis Aquatech Pool Supply, Inc., did not violate the Virginia Consumer Protection Act. It is therefore adjudged and ordered that Count I of the Plaintiff's Motion for Judgment is dismissed. It is further ordered that Count II of Plaintiff's Motion for Judgment is dismissed. It is further ordered that the Defendant is liable to the Plaintiff in the amount of $800.00 for breach of contract pursuant to Count VII of Plaintiff's Motion for Judgment.